# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISON

| | |
|---|---|
| TRENT C. GRAY, | ) CASE NO. 1:20-CV-02123-BYP |
| | ) |
| Plaintiff, | ) JUDGE BENITA Y. PEARSON |
| | ) UNITED STATES DISTRICT JUDGE |
| v. | ) |
| | ) MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | ) CARMEN E. HENDERSON |
| | ) |
| Defendant, | ) **REPORT & RECOMMENDATION** |
| | ) |

**I. Introduction**

Plaintiff, Trent C. Gray ("Gray" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is that the Court REVERSE the Commissioner of Social Security's nondisability finding and REMAND this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

**II. Procedural History**

On August 20, 2015, Claimant filed an application for DIB, alleging a disability onset date of February 28, 2014. (ECF No. 11, PageID #: 192). The application was denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). On November 8, 2017, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (ECF No. 11, PageID #: 116). On December 7, 2017,

1

the ALJ issued a written decision finding Claimant was not disabled. (ECF No. 11, PageID #: 189). Upon review, the Appeals Council remanded the case on June 11, 2018. (ECF No. 11, PageID #: 209-212). Upon remand, Claimant and a new vocational expert appeared and testified at a second hearing held on November 14, 2018 before the same ALJ (ECF No. 11, PageID #: 91). The ALJ again issued an unfavorable decision dated December 14, 2018. (ECF No. 11, PageID #: 214). The Appeals Council granted review a second time but issued an unfavorable decision on July 23, 2020. (ECF No. 11, PageID #: 77). In that decision, the Appeals Council adopted each of the ALJ's findings except those at Step Five. (ECF No. 11, PageID #: 80-81). The Appeals Council determined that Claimant could perform only one of the representative jobs set forth by the ALJ. (ECF No. 11, PageID #: 81). The Appeals Council decision became the final decision of the Commissioner.

On September 21, 2020, Claimant filed his Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 13, 16 and 17). Claimant asserts the following assignments of error:

1. The ALJ failed to properly evaluate Mr. Gray's pain and other symptoms caused by his Fibromyalgia, and Psychological Factors Affecting Physical Condition Disorder according to the mandates of SSR 12-2p and SSR 16-3p.

2. The ALJ failed to cite good reasons for rejecting the opinion of the treating physician as required by SSR 96-2p and 20 CFR 404.1527 and failed to evaluate the opinion of the consultative examiner, Dr. Smith.

(ECF No. 13 at 3).

### III. Background

    **A. Relevant Hearing Testimony**

1. **Claimant's Testimony**

The ALJ summarized Claimant's hearing testimony:

> The claimant testified that he was diagnosed with fibromyalgia "roughly 20 years ago," during a psychiatric inpatient hospitalization, when he was examined by a psychiatrist in the hospital who pressed on tender trigger points. He said that the main infestations of this illness now is that he carries a lot of tension in his neck, has pain throughout his back, and suffers from insomnia. As for the claimant's mental impairments, he testified that he has extreme anxiety when he leaves the house. He reported that he does not go to meetings, shop, attend church, or eat out and only leaves the house for medical appointments. He reported that he is unable to drive, and does not take public transportation because "it would provoke a lot of anxiety." He indicated that he is always "on guard" and hypervigilant. (Hearing testimony).

(ECF No. 11, PageID #: 225).

2. **Vocational Expert's Testimony**

The ALJ propounded the following hypothetical question to the vocational expert:

> All right. This individual is limited to work at medium exertional requirements, but has additional non-exertional limitations specifically no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; no exposure to hazards such as heights, machinery, commercial driving; and mental limitation that he perform routine tasks in a low-stress environment specifically no fast pace, strict quotas, or frequent-duty changes involving superficial, interpersonal interactions with coworkers and supervisors specifically no fast pace, strict quotas, or frequent-duty changes; and no interaction with the general public as a job requirement.

(ECF No. 11, PageID #: 107-108). The vocational expert testified that the individual could not perform Claimant's past relevant work. (ECF No. 11, PageID #: 108). At the ALJ's request, the vocational expert provided two jobs that the hypothetical individual could perform at each of the sedentary, light and medium exertional levels. (ECF No. 11, PageID #: 108-109). The sedentary level jobs that the vocational expert identified were document preparer and addresser/typewriter,

3

computer. (ECF No. 11, PageID #: 109). The light level jobs that the vocational expert identified were merchandise marker and mail room clerk. (ECF No. 11, PageID #: 109). The medium level jobs that the vocational expert identified were cleaner II and kitchen helper. (ECF No. 11, PageID #: 108). The vocational expert later clarified that a kitchen helper would not be available, but that the job of linen room attendant would. (ECF No. 11, PageID #: 112).[1]

The ALJ created a second hypothetical question with the same limitations as the first but added that the hypothetical individual would be off task 20% of the time. (ECF No. 11, PageID #: 110). The vocational expert said there would be no jobs that could be sustained under that condition. (ECF No. 11, PageID #: 110).

Ultimately, the ALJ found that Claimant had the RFC to perform a range of medium work with additional limitations.

**B. Relevant Medical Evidence**

The ALJ also summarized Claimant's health records and symptoms:

> The claimant has had limited and conservative treatment of his fibromyalgia, which has been managed by his primary care provider, Jason Ridgel, M.D. Dr. Ridgel's office visit notes from October 2014 through December 7, 2017 are in the record. When Dr. Ridgel first treated the claimant, fibromyalgia was mentioned in passing, as the claimant was presenting with a more immediate concern of a persistent rash characterized by excoriated legions that appeared to be self-inflicted. When the claimant saw Dr. Ridgel on March 2, 2015, he was reporting generalized fatigue, widespread pain, and difficulty falling asleep. Treatment notes indicate that the claimant's skin had improved. At his next appointment with Dr. Ridgel on June 3, 2015, the claimant's main complaint was fibromyalgia, accompanied by difficulty in remembering words. Dr. Ridgel initiated treatment with amitriptyline, although treatment notes indicate that Dr. Ridgel plan to monitor him carefully on this

---

[1] The ALJ's decision listed cleaner II and kitchen helper as jobs available at medium exertional level with the RFC's additional limitations. (ECF No. 11, PageID #:233). The Appeals Council on review determined that these jobs were not consistent with the RFC but that the linen room attendant job was. (ECF No. 11, PageID #:81).

medication, due to an emerging clinical picture of bipolar disorder. Physical examinations in 2016 and 2017 include findings of generalized fatigue, morning stiffness, widespread pain, and difficulty falling asleep, but describe the claimant as being in no acute distress, and tend to focus on the claimant's psychological distress as the primary diagnosis. Dr. Ridgel's treatment notes also indicate that he believed the claimant's inactivity was contributing to the severity of his fibromyalgia symptoms, and he advised him to exercise. In the last record of Dr. Ridgel's treatment which is available, the claimant was advised to take his entire Elavil dose at night to help his pain syndrome, and improve sleep. He also strongly advised the claimant to performing indoor exercise on a treadmill or bike. (Exhibits 1F, p. 7, 9-13, 17-18; 5F, p. 8; 6F, p. 8; 9F, p. 3, 5; 13 F, p. 3-4).

[…]

The claimant received treatment for his mental health impairments at the Nord Center. He was briefly hospitalized on November 4, 2014 when his roommate told him that he would have to move out because of paranoid and threatening behavior. When he presented at the hospital, he reported that he had been off of his psychiatric meds for the last four years. While on the inpatient unit, he was observed to have significant difficulty sleeping, anxiety, hypervigilance, peculiar behavior, and paranoia. He left on November 8, 2014, against medical advice, and told Nord Center staff that he would follow up with his primary care provider, the only medical professional with whom he felt comfortable. Discharge notes indicate that over the course of his hospitalization he presented as less anxious but preoccupied with small details, and with delusional, grandiose, and persecutory thinking, little insight, and tangential speech patterns. The Nord Center made follow-up attempts with the claimant, but he was discharged from their services when he did not respond to outreach attempts. (Exhibit 12F, p. 6, 9, 52).

Dr. Ridgel treated the claimant's mental health impairments with medications. When the claimant first saw Dr. Ridgel on October 9, 2014, he presented with skin lesions. He explained that he had a feeling that he had hairs that were stuck under his skin and he felt the urge to dig them out. He also reported the sense that hairs were growing out of his eyes as well. Dr. Ridgel's treatment notes describe this as a fixed delusion. During the period of time under consideration in this claim, Dr. Ridgel's treatment notes show that the claimant experienced some remission in self harming behavior of causing injuries to his skin, with periodic exacerbations. Treatment notes from 2015 indicate that Dr. Ridgel initiated

tricyclic treatment; however, October 5, 2015 office visit notes indicate that he switched the claimant to Depakote, due to an inadequate response to Elavil. Treatment notes from five weeks later note that the claimant had failed to Depakote, [sic] and was [sic] be switched back to Elavil, as other treatment options were cost-prohibitive. Ultimately, however, the record shows that Dr. Ridgel prescribed Seroquel. The record reflects that the claimant discontinued this medication on his own. Dr. Ridgel's treatment notes also show that the claimant presented with continuing anxiety about leaving the house, failure to bathe regularly, and concerns about medication side effects. Also, Dr. Ridgel's treatment notes indicate that he strongly encouraged the claimant to engage in counseling. (Exhibits 1F, p. 7, 9- 13, 15, 17-18; 5F, p. 8; 6F, p. 8; 9F, p. 3; 13 F, p. 4).

The claimant met with Ronald G. Smith, Ph.D. for psychological consultative evaluation on April 27, 2016. Dr. Smith's report shows that the claimant arrived on time, and brought along a cushion to sit on. He reported that it was painful to walk due to muscles on his left side and left- sided back pain. He reported that he was having "memory issues." He said that these issues had interfered with his past work performance, and that he had left his last job on a temporary disability due to missing a lot of work and not being able to remember important information in the work setting. He also reported a history of difficulty getting along with coworkers, due to feelings of paranoia. The claimant told Dr. Smith that his primary care provider was treating her [sic] with medication, including Elavil. He reported that he had tried to take Depakote, but could not tolerate it due to nausea. He reported that he ate regularly but did not do much in the way of cooking or chores. He said that his anxiety interferes with leaving the house to go shopping or elsewhere. (Exhibit 2F, p. 2-7).

The claimant returned to the Nord Center for an adult diagnostic assessment on January 5, 2017. Assessment notes indicate that the claimant displayed increased insight, stating, "I actually should have gotten treatment a long time ago." He reported difficulty concentrating, negative beliefs, and intrusive memories of past trauma, depression and sadness, as well as a history of periods with elevated mood, decreased sleep, pressured speech, and excessive worrying. Mental status examination observations show that the claimant was oriented in all spheres with above average insight and judgment, estimated above average intelligence, with full affect, and moderate impairment of attention and concentration. He was also described as being well- groomed and cooperative, with average eye contact and clear speech. (Exhibit 12F, p. 18).

6

> The claimant attended psychotherapy with Craig Cunningham, LSW at the Nord Center on a regular basis from January 31, 2017 through August 1 of 2017. Documentation from sessions with Mr. Cunningham indicate that the claimant discussed his interpersonal difficulties, past trauma, and efforts to develop coping strategies. Mr. Cunningham used EMDR (Eye Movement Desensitization and Reprocessing) therapy to treat the claimant. Treatment notes indicate that the claimant engaged in treatment in a cooperative manner, and experienced some improvement in his mood. (Exhibit 10F, p. 17-53).

(ECF No. 11, PageID #: 225-227).

### C. Opinion Evidence at Issue[2]

Dr. Ronald G. Smith performed a consultative examination on Claimant on April 27, 2016. (ECF No. 11, PageID #: 492). Following the examination, Dr. Smith completed a functional assessment of Claimant's mental abilities and limitations. (ECF No. 11, PageID #: 497-498). With respect to Claimant's ability to understand, remember, and carry out instructions, Dr. Smith opined that he appeared "capable of understanding instructions. He complains of his memory and he may have trouble remembering instructions well. His ability to carry them out successfully will be disrupted because of current feelings of depression and hopelessness and a feeling of vulnerability in a job situation whenever he feels as if he's being criticized or negatively evaluated." (ECF No. 11, PageID #: 498). With respect to Claimant's ability to maintain attention and concentration and sustain persistence and pace to perform simple tasks and perform multi-step tasks, Dr. Smith opined that Claimant "may have trouble maintaining adequate attention and concentration because of his current depression and because of complaints of short term memory problems." (ECF No. 11, PageID #: 498). With respect to Claimant's ability to respond appropriately to supervisors and

---

[2] Because this Report and Recommendation deals only with Dr. Smith's opinion, the remaining opinion evidence has been omitted.

7

coworkers in a work setting, Dr. Smith opined that Claimant "may have difficulty dealing appropriately with supervisors and coworkers." (ECF No. 11, PageID #: 498). Finally, Dr. Smith opined that Claimant "will have trouble dealing with work pressures as he has in the past currently because of depression and also because of continuing problems that he's had in dealing with coworkers in job situations." (ECF No. 11, PageID #: 498).

The ALJ did not address Dr. Smith's opinion in the decision.

### IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 3. The claimant has the following severe impairments: bipolar disorder in partial remission; anxiety with post traumatic stress disorder; psychological factors affecting physical condition; and fibromyalgia. (20 CFR 404.1520(c)).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity (20 CFR 404.1545) to perform medium work as defined in 20 CFR 404.1567(c), except he cannot climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; cannot be exposed to hazards (heights, machinery, commercial driving); and mentally, he can perform routine tasks in a low stress environment (no fast pace, strict quotas or frequent duty changes), involving superficial interpersonal interactions with coworkers and supervisors (no fast pace, strict quotas or frequent duty changes), and no interaction with the general public as a job requirement (20 CFR 404.1569a).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

### V. Law & Analysis

#### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v.*

*Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she

9

is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Claimant raises two issues on appeal: 1) whether the ALJ properly evaluated the pain and other symptoms caused by his fibromyalgia and psychological factors affecting physical condition disorder according to the mandates of SSR 12-2p and SSR 16-3p; and 2) whether the ALJ properly evaluated the medical sources; specifically, whether the ALJ provided good reasons for rejecting the opinion of Claimant's treating physician and whether the ALJ's failure to evaluate the opinion of the consultative examiner requires remand. This Court finds that remand is necessary because the ALJ erred in failing to evaluate the opinion of the consultative examiner and the error was not harmless. Because remand is necessary, the Court will not address the remaining issues raised by Claimant.

Dr. Smith performed a consultative examination on Claimant on April 27, 2016. (ECF No. 11, PageID #: 492). Following the examination, Dr. Smith completed a functional assessment of Claimant's mental abilities and limitations. (ECF No. 11, PageID #: 497-498). With respect to Claimant's ability to understand, remember, and carry out instructions, Dr. Smith opined that he appeared "capable of understanding instructions. He complains of his memory and he may have trouble remembering instructions well. His ability to carry them out successfully will be disrupted because of current feelings of depression and hopelessness and a feeling of vulnerability in a job situation whenever he feels as if he's being criticized or negatively evaluated." (ECF No. 11,

10

PageID #: 498). With respect to Claimant's ability to maintain attention and concentration and sustain persistence and pace to perform simple tasks and perform multi-step tasks, Dr. Smith opined that Claimant "may have trouble maintaining adequate attention and concentration because of his current depression and because of complaints of short term memory problems." (ECF No. 11, PageID #: 498). With respect to Claimant's ability to respond appropriately to supervisors and coworkers in a work setting, Dr. Smith opined that Claimant "may have difficulty dealing appropriately with supervisors and coworkers." (ECF No. 11, PageID #: 498). Finally, Dr. Smith opined that Claimant "will have trouble dealing with work pressures as he has in the past currently because of depression and also because of continuing problems that he's had in dealing with coworkers in job situations." (ECF No. 11, PageID #: 498).

Claimant argues that remand is required because the ALJ failed to evaluate Dr. Smith's opinion. The Commissioner concedes that that the ALJ failed to evaluate Dr. Smith's opinion but argues that the error is harmless since the RFC is consistent with the limitations expressed by Dr. Smith. (ECF No. 16 at 22). In reply, Claimant disagrees that Dr. Smith's opinions are consistent with the limitations in the RFC because the RFC does not contain an off-task limitation, which is supported by Dr. Smith's opinion. (ECF No. 17 at 9).

An ALJ is required to evaluate every medical opinion received. *Collins v. Comm'r of Soc. Sec.*, 356 Fed. App'x. 663, 668 (6th Cir. 2009). In particular here, an ALJ must consider the findings and opinions of the state agency medical consultants, because the "Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. § 404.1513a(b)(1). When doing so, an ALJ will evaluate the findings using the relevant factors in §§ 404.1520b, 404.1520c and 404.1527, such as the consultant's medical specialty and expertise, the supporting evidence in the case record, consistency of the consultant's

11

opinion with evidence from other sources in the record, supporting explanations the medical or psychological consultant provides, and any other factors relevant to the weighing of the opinions.[3] 20 C.F.R. § 404.1513a(b)(2). Finally, an ALJ must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant unless a treating physician's opinion has been accorded controlling weight. *See* 20 C.F.R § 404.1527(e). Although the "good reasons" requirement does not apply to opinions from physicians who, like Dr. Smith, have examined but not treated a claimant, *see Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010), "the ALJ's decision still must say enough 'to allow the appellate court to trace the path of his reasoning.'" *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 518-20 (6th Cir. 2011) (citing *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)).

In *Stacey*, the Sixth Circuit found that the ALJ's failure to take account of the opinion of an examining but not treating doctor which conflicted with the plaintiff's RFC was an error. Although the ALJ mentioned the doctor's opinion during his discussion of the plaintiff's medical history, the ALJ ultimately adopted the opinion of another physician, who reviewed the medical records but did not examine the plaintiff. The Sixth Circuit found this was in error as it could not trace the ALJ's reasoning for why he ignored the examining doctor's opinion. Specifically, the Court could not discern whether the ALJ discounted the examining doctor's opinions for valid or invalid reasons, or simply ignored them altogether. *Id*. at 519. Crucial to the rationale in *Stacey* is whether the opinion conflicts with the RFC.

The parties agree that the ALJ failed to evaluate the medical opinion of consultative psychologist Dr. Smith. Dr. Smith opined that Claimant's ability to carry out job instructions

---

[3] The regulations for handling medical opinion evidence have been revised for claims filed after March 27, 2017. *See* 20 C.F.R. § 416.927. Claimant filed his claim before the revision took effect.

12

successfully "will be disrupted because of his current feelings of depression and hopelessness, and a feeling of vulnerability in a job situation whenever he feels as if he is being criticized or negatively evaluated." Dr. Smith also opined that Claimant "will have trouble dealing with work pressures as he has in the past, currently because of depression and also because of the continuing problems that he had in dealing with co-workers in job situations." Claimant argues that these two limitations directly relate to Claimant's ability to remain on task, yet the mental RFC does not include any off-task limitations. (ECF No. 13 at 22). Thus, Claimant argues, the ALJ erred by not taking into account Dr. Smith's conflicting opinion. The Commissioner argues, however, that the ALJ's error in failing to address Dr. Smith's opinion is harmless because the RFC indirectly incorporated Dr. Smith's limitations by limiting Claimant to a low stress environment, only superficial interpersonal interactions with coworkers and supervisors and no interaction with the general public. (ECF No. 16 at 23 (citing *Mason v. Berryhill*, No. 4:18-cv-865, 2019 WL 2465316, at *15-16 (N.D. Ohio Mar. 6, 2019), *report and recommendation adopted by* 2019 WL 3797930 (N.D. Ohio Aug. 13, 2019); *Jackson v. Saul*, No. 1:18-cv-2362, 2020 WL 858061, at *6 (N.D. Ohio Feb. 21, 2020) (an RFC restricting the claimant to routine, low stress work with limited social interaction sufficiently addressed the claimant's difficulties in dealing with work pressures); *Ferguson v. Comm'r of Soc. Sec.*, No. 3:15-cv-2714, 2017 WL 9473077, at *14-15 (N.D. Ohio Jan. 25, 2017) (same)).

The ALJ found that Claimant had the mental RFC to "perform routine tasks in a low stress environment (no fast pace, strict quotas or frequent duty changes), involving superficial interpersonal interactions with coworkers and supervisors (no fast pace, strict quotas or frequent duty changes), and no interaction with the general public as a job requirement (20 CFR 404.1569a)." (ECF No. 11, PageID #: 224-225). The Court agrees with Claimant that there is no

mention of off-task limitation in the RFC and that Dr. Smith's opinion that Claimant's ability to carry out job instructions "will be disrupted" may suggest that he will be off task. Because the ALJ failed to address the opinion, the Court cannot discern how the ALJ interpreted the limitation in connection with the record evidence. The Commissioner relies on *Mason* for the proposition that "even an assessment of 'moderate' limitations in carrying out simple job instructions is consistent with an RFC restricting the claimant to simple, routine work with limited interaction with coworkers and supervisors and no interaction with the public." (ECF No. 16 at 22 (citing *Mason*, 2019 WL 2465316, at *15-16)). However, unlike in *Mason*, the limitations opined by Dr. Smith are not necessarily tied to the level of difficulty of the instructions, but instead could be tied to Claimant's ability to stay on task. One could interpret Dr. Smith's opinion as suggesting that the Claimant's inability to carry out instructions would not be alleviated through a limitation to simple, routine tasks. Because the ALJ failed to mention the opinion or include an off-task limitation in the RFC, this Court cannot "build and accurate and logical bridge" between the ALJ's analysis and the RFC. *Ripley v. Comm'r of Soc. Sec.*, 415 F. Supp. 3d 752, 764–65 (N.D. Ohio 2019) (quoting *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (additional citations omitted)).

  Moreover, the ALJ in *Mason* did not completely omit discussion of the physician's opinion, but, rather, engaged in a lengthy analysis of the reasons for the weight given to the opinion in question. *See Mason*, 2019 WL 2465316, at *15-16. Here, although the ALJ mentioned that Claimant had been examined by Dr. Smith during his discussion of the Claimant's medical history, the ALJ failed to address, examine, or weigh Dr. Smith's opinion at all. The ALJ's omission of any reference to Dr. Smith's opinion is all the more noticeable given the fact that, in his earlier decision, the ALJ had assigned weight to the opinion along with the supporting rationale for that

14

weight. Nonetheless, the Appeals Council's remand order required the ALJ to, among other directives,

> [g]ive further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p). In so doing, evaluate the nontreating source opinion pursuant to the provisions of 20 CFR 404.1527 and nonexamining source opinion in accordance with the provisions of 20 CFR 404.1527, and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request the nontreating source to provide additional evidence and/or further clarification of the opinion (20 CFR 404.1520b).

(ECF No. 11, PageID #: 211). Despite this clear directive to further consider, assess, evaluate and explain the evidence, the ALJ failed to evaluate Dr. Smith's opinion and explain the weight given to this evidence. Accordingly, this Court is left with an inability to discern whether the ALJ discounted his opinion for valid or invalid reasons, or simply ignored it altogether. *See Stacey*, 451 F. App'x at 519.

Finally, the error is not harmless. "[A]n error is harmless only if remanding the matter to the agency 'would be an idle and useless formality' because 'there is [no] reason to believe that [it] might lead to a different result.'" *Stacey*, at 520 (quoting *Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004)). That is not the case here. If the ALJ had accepted Dr. Smith's assessment of how Claimant's limitations would affect his ability to be on task, there is a possibility that Claimant would have prevailed. The vocational expert testified that being off task as much as twenty percent would preclude all jobs. (ECF No. 11, PageID #: 110). Accordingly, the ALJ's failure to weigh the opinion of Dr. Smith constitutes procedural error. *See Stacey*, 451 F. App'x at 519. This Court recommends remand.

Having determined that remand is necessary, in the interest of judicial economy, the Court

will not opine as to Claimant's additional issues. However, on remand, the parties may litigate the remaining issues as deemed necessary.

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court REVERSE the Commissioner of Social Security's nondisability finding and REMAND this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

Dated: November 8, 2021

                                                s/ *Carmen E. Henderson*
                                                CARMEN E. HENDERSON
                                                U.S. MAGISTRATE JUDGE

---

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).